# EXHIBIT 12

FWS Concurrence letter (June 16, 2010)



# United States Department of the Interior

FISH AND WILDLIFE SERVICE
Ecological Services
764 Horizon Drive, Building B
Grand Junction, Colorado 81506-3946



IN REPLY REFER TO:
ES/CO:FS/GMUG/Paonia RD
TAILS 65413-2010-F-0109

June 16, 2010

Charles S. Richmond
Forest Supervisor
Grand Mesa, Uncompahgre and Gunnison National Forests
2250 Highway 50
Delta, Colorado 81416

Dear Mr. Richmond:

The US Fish & Wildlife Service (Service) has reviewed the biological assessment (BA) of the proposed coal lease modifications adjacent to existing coal leases COC-1362 and COC-61209. We received the BA in our office on April 22, 2010. Upon our initial review of the proposed action, we determined that similar actions in the past have resulted in water depletions from the Gunnison River watershed which may affect the four endangered Colorado River Fish. Additional information was received via electronic mail on June 3rd, 8th and 9th, 2010, which amended the original BA for the proposed action and provided the necessary information for us to address the associated water depletions.

The consultation histories for Canada lynx (*Lynx canadensis*) (lynx) and the Colorado River fishes include a programmatic biological opinion (PBO) for the respective species. The Canada lynx programmatic is referred to as the Sothern Rockies Lynx Amendment (SRLA) BO, number ES/LK-6-CO-08-F-024. The Colorado River Fishes programmatic BO is ES/GJ-6-CO-99-F-033-CP062.

Background
As stated in your April 14, 2010, Opportunity to Comment document, the US Forest Service (Forest Service), the Bureau of Land Management Uncompahgre Field Office (Bureau) and the US Department of the Interior Office of Surface Mining, Western Regional Coordinating Center will participate in the analysis as cooperating agencies. Since each of the respective agencies retains some level of discretion in the approval process for the proposed lease modifications, the Service concludes that this document serves to satisfy the respective Endangered Species Act (as amended) Section 7 responsibilities of the cooperating agencies.

*Colorado River Endangered Fish*
The Service issued biological opinion (BO) ES/GJ-6-CO-F-033-CP062 (as amended April 27, 2007), which established programmatic consultation procedures for Forest Service projects that may affect the four endangered Colorado River fishes. Forest Service projects that result in one-time depletions occurring on the Gunnison River (among other rivers) are limited to

50 acre-feet per project and 100 acre-feet per year cumulatively. Under these circumstances, the Forest Service is required to provide an annual report of authorized water depletions falling under the PBO. Based on information received from the Forest Service, up to ten methane drainage wells (MDW) may be drilled per year with a total of 45 MDW projected. Consumptive use of water associated with MDW drilling activities totals approximately 1 acre-foot per year. On that basis the Forest Service anticipates a total water consumption of approximately 4.5 acre-feet of water over a period of approximately 5 years.

Proposed Action

As stated in the BA, the Bureau is required by law to consider leasing Federally-owned minerals for economic recovery. With respect to lands managed by the Forest Service, the agency (Forest Service) considers consenting to the Bureau leasing coal reserves underlying lands under its jurisdiction, and prescribes conditions (as stipulations) for the protection of non-mineral resources. In this instance, the Forest Service is considering consenting to the Bureau modifying existing Federal coal leases COC-1362 and COC-61209 by adding approximately 1,722 cumulative acres (800 and 921 surface acres respectively (Figure 1 in BA)) to them. The Forest Service will also identify any needed stipulations to protect non-coal (surface) resources. If the Forest Service consent is given, the Bureau would offer the modifications by non-competitive bid.

At the leasing stage, the Federal agencies evaluate the effects of subsidence (i.e. the land surface lowered as a result of mining) on surface resources, and identify where surface resources may require specific protection from subsidence or foreseeable surface uses. Under a foreseeable mine plan scenario (described in the BA), surface uses on these modifications may include MDW and associated access roads required to safely mine the coal resources. Although specific location of the MDW and roads are not known at this time, surface uses are reasonably projected for effects analysis purposes.

The proposed action is anticipated to result in interrelated/interdependent actions, conducted by the applicant, resulting in ground disturbing activities on Forest Service lands. The proposed action does not authorize ground disturbing activities at this time, but the Forest Service anticipates the development of approximately 45 MDW and approximately 6.5 miles of temporary roads to access the MDW. In addition to MDW development, the Forest Service anticipates other post-leasing disturbances including: exploratory drilling, seismic exploration, ground water monitoring well installation hydrology monitoring facilities. The effects of these actions are addressed herein.

The Forest Service has required the following lease stipulations:

1. Compliance with the Grand Mesa, Uncompahgre, and Gunnison National Forests 2008 amendment whereby winter access will be limited to designated routes.
2. Surface disturbance operations within lynx habitat will:
    a) Employ remote monitoring of development sites and facilities to reduce snow compaction.
    b) Require the development of a reclamation plan for restoration of sites and facilities (i.e. roads and well pads) located within lynx habitat.

2

c) Restrict public motorized access from project specific roads.
d) Design access road for effective closure and reclaim or decommission all project-specific roads that are not needed for other management objectives.
e) New permanent roads will not be built on ridge tops or saddles, if possible, or in areas identified as important for lynx habitat connectivity. New roads will be situated away from forested stringers, if possible.

The BA also included the following assumptions related to subsequent ground disturbing activity:
1. Surface disturbance of up to approximately 75 acres resulting from the development of roads and well pads to facilitate drilling of MDW.
2. Exploratory drilling, staging areas and ground water monitoring drill pads and access roads will use the same locations used for MDW.

Environmental Baseline
The proposed action is located within the Mount Gunnison lynx analysis unit (MGLAU), which for lynx is considered the action area. The environmental baseline for lynx is generally represented by habitat statistics for a LAU as well as other influences that may negatively affect the condition of the LAU. Table 4 in the BA reported the environmental baseline habitat statistics for the MGLAU and contains sufficient habitat in a suitable condition to support lynx. Lynx habitat in an unsuitable condition was reported at 0.5 percent, well within the Forest Plan standards.

Effects of the Action
The general effects of the proposed action, including mineral development, road construction and use of roads, tiers to the effects analysis presented in the SRLA BO. Specifically, the proposed action is anticipated to result in approximately 75 acres of lynx habitat being reduced to stand initiation structural stage (SISS) (i.e. unsuitable condition). Approximately 45 acres of impact is anticipated for well pad development to site MDW. In addition, 24 acres of lynx habitat will be reduced to SISS from temporary road construction to access the MDW locations. While the specific locations of the anticipated habitat impacts are unknown at this time, they will be confined to the MGLAU. The impacts of the proposed action represent a 0.003percent change in the lynx habitat within the MGLAU. The cumulative total of the LAU in SISS is not anticipated to increase by a measureable amount and is therefore considered insignificant.

Surface disturbance activities are anticipated to occur over the life of the lease modifications (i.e. 25 years from lease issuance to lease relinquishment and final bond release). We assume that mitigation requirements will be fulfilled at that time. We further assume that absent additional vegetative disturbances within the mitigation areas, lynx habitat may recover to year-round functionality approximately 30-40 years post-disturbance.

Conclusion
On February 25, 2009, the Service published its revised designation of critical habitat final rule for lynx. Habitats within Colorado were not included in the final rule. Therefore the proposed action will not affect critical habitat

We concur with your determination that the proposed action may affect but is not likely to adversely affect the Canada lynx. Several assumptions were incorporated into your analysis of effects as stated above. If those assumptions prove incorrect, please contact the Service to discuss any changes that may require further analysis or reinitiation of section 7 consultation.

The Service bases our conclusions on the information and analyses contained in the BA and additional information provided for this project, our August 20, 2008, BO for the SRLA, and the information we relied upon to develop the opinion. As provided in 50 CFR 402.16, reinitiation of formal consultation is required where discretionary Federal agency involvement or control over the action has been maintained (or is authorized by law) and if: (1) the amount or extent of incidental take anticipated in the first-tier BO is exceeded; (2) new information reveals effects of the agency action that may affect listed species or critical habitat in a manner or to an extent not considered in the first-tier opinion; (3) the agency action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the first-tier opinion; or (4) a new species is listed or critical habitat designated that may be affected by the action. In instances where the amount or extent of incidental take is exceeded, any operations causing such take must cease, pending reinitiation.

If the Service can be of further assistance, please contact Kurt Broderdorp at the letterhead address or (970) 243-2778, extension 24

Sincerely,

Allan R. Pfister
Western Colorado Supervisor

PC:   BLM, Uncompahgre Field Office
      OSM, Western Regional Coordinating Center

KBroderdorp:FSGMUGPaoniaRDSunsetCoalLeaseModsCL.doc:06162010:KM

4