**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-3025-PAB

HIGH COUNTRY CONSERVATION ADVOCATES, *et al.*,
    Plaintiffs,

v.

UNITED STATES FOREST SERVICE, *et al.*,
    Federal Defendants, and

MOUNTAIN COAL COMPANY, LLC,
    Defendant-Intervenor.

_____

**PLAINTIFFS' CORRECTED REPLY IN SUPPORT OF EMERGENCY MOTION TO ENFORCE REMEDY**

_____

The Tenth Circuit ordered vacatur of the North Fork Exception to the Colorado Roadless Rule, which was the only basis for Mountain Coal Company (MCC) to construct roads in the Sunset Roadless Area. The Tenth Circuit squarely considered, and rejected, MCC's request for a lesser remedy that would not have prohibited road construction and related mining.

Now, MCC asks this Court to find that the Tenth Circuit's ruling has no impact on its ability to construct roads in the Sunset Roadless Area. MCC repeatedly inquired with the Forest Service about the timeline for reinstating the North Fork Exception, but apparently determined that it would not occur quickly enough. *See* Decl. of Weston Norris ¶ 4, ECF 84-1. MCC first constructed an illegal road after the Tenth Circuit issued its April 24, 2020 mandate and before this Court entered it, and then continued to construct drilling pads adjacent to that road after this Court's June 15 vacatur order. Norris Decl. ¶¶ 6–7; Decl. of Sally Jane Pargiter ¶¶ 4–6, ECF 77-3; Decl. of Brett A. Henderson ¶¶ 7–11; Decl. of Matt Reed ¶¶ 3–11. Construction did not stop

1

until the Colorado Division of Reclamation, Mining and Safety (DRMS) issued a stop-work order around June 17, finding that MCC's activities violated the vacatur orders. Norris Decl. ¶ 7; Cessation Order, ECF 79-1. MCC's claim that it can construct roads based on statutory and lease rights fails because its right to construct roads depends entirely on a valid North Fork Exception.

After receiving notice, the Forest Service stood aside and allowed MCC to bulldoze the new road. Norris Decl. ¶ 5; Decl. of Chad Stewart ¶ 14, ECF 80-1. The Service claims its hands were tied before the district court entered the mandate, yet it remains largely silent as to the legality of MCC's construction that occurred after the district court's vacatur order. This Court should not allow the Forest Service to allow MCC to police its own conduct on federal lands.

Contrary to MCC's and Forest Service's claims, Conservation Groups seek no additional relief beyond vacatur of the North Fork Exception, which bars road construction. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) (when vacatur provides a sufficient remedy, "no recourse to the additional and extraordinary relief of an injunction is warranted").[1]

## ARGUMENT

I.  **The Tenth Circuit's Vacatur Order Prohibits Road Construction in the Sunset Roadless Area.**

The Tenth Circuit unambiguously ordered vacatur of the North Fork Exception—the only authority for road construction in the Sunset Roadless Area. Op. 22, ECF 69-1. Before MCC could construct roads within the modified leases, the Forest Service had to adopt the North Fork

---

[1] Conservation Groups seek relief only for construction undertaken after the Tenth Circuit's order and mandate. Pls.' Emergency Mot. to Enforce Remedy (Mot.) 13, ECF 77. This relief would not stop all mining in the lease modification area. Before the Tenth Circuit ruled, MCC completed road construction for mine panel 1 in this area. Stewart Decl. ¶ 10. DRMS has not issued a stop-work order for this panel since the road construction is complete. ECF 79.1 at 3.

Exception to the Colorado Roadless Rule. Based on this exception, the Bureau of Land Management (BLM) issued the lease modifications, and the Forest Service consented to them, giving MCC limited authorization to construct roads. *See* FSLeasingII-76–77, -168, -1103, -1127, -1130–31, BLM9 (all administrative record references attached in Ex. A). The Tenth Circuit's decision to vacate the North Fork Exception removes this authorization. Mot. 6–10; *see Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) (court order must be given effect "as to all events, regardless of whether such events predate or postdate [the court's] announcement of the rule"); FSLeasingII-1131 (Forest Service admitting that if "a court vacates [the North Fork Exception], then the proposed lease modifications would not be able to proceed").

### A. The Tenth Circuit vacated the entire North Fork Exception knowing that it would prohibit mining in the Sunset Roadless Area.

MCC requested that the Tenth Circuit issue a lesser remedy because "vacatur of the entire North Fork Exception would again freeze coal exploration in the entire North Fork . . . Exception Area and prevent [MCC] from further roadbuilding and mining in the Lease Modifications." Mot. Ex. 1, ECF 77-1.[2] The Court, exercising its "traditional equitable powers," rejected MCC's request. Op. 22. Instead, the Court found that the legal flaw implicated the North Fork Exception "as a whole," requiring reconsideration of the entire decision. *Id.*

MCC now claims that the North Fork Exception has no impact on its ability to construct roads or clear adjacent drilling pads. MCC ignores the Tenth Circuit's consideration of the equities and other case law. "Vacatur of agency action is a . . . form of injunctive relief." *Diné*

---

[2] MCC's post-hoc claim that it assumed the Court would also vacate the lease modifications lacks merit. MCC 9. MCC's admission appears in a section addressing what the Court should do if it ruled in Conservation Groups' favor on the North Fork Exception claims. Ex. B (Br. 40–49). MCC addressed vacatur of the lease modifications in a separate section. *Id.* (Br. 49–52).

3

*Citizens Against Ruining Our Env't v. Bernhardt* ("*Diné CARE*"), 923 F.3d 831, 859 (10th Cir. 2019), *reh'g denied* (June 24, 2019) (quotation omitted). This remedy "may be quite disruptive," including invalidating authorizations premised on vacated decisions. *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993); *Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, No. 3:19-CV-00216 JWS, 2020 WL 2892221, at *10 (D. Alaska June 1, 2020) (vacatur of land exchange enjoined road construction and other authorizations).

MCC claims, without citation, that the Tenth Circuit did not intend to "eliminate[] rights conferred by other decisions." MCC Opp'n to Pls.' Emergency Mot. to Enforce Remedy 8 ("MCC"), ECF 84. But any "right" to construct roads in the Sunset Roadless Area was premised on the North Fork Exception. The vacatur order invalidates the Exception as of the date the Forest Service adopted it, and thereby invalidates the Forest Service's consent to road construction for the leases—"all parties charged with applying [a judicial] decision, whether agency or court . . . must treat it as if it had always been the law." *Nat'l Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995). It would be incongruous for the Court to set aside the North Fork Exception, but still intend for MCC—the only entity with any plans to avail itself of the Exception at the time of its adoption and presently—to proceed as if it were still in place.

**B.     The Tenth Circuit's methane-flaring ruling has no bearing on the remedy.**

MCC attempts to sidestep the vacatur order by pointing to the Tenth Circuit's holding that BLM and the Forest Service did not need to consider a methane-flaring alternative under the National Environmental Policy Act (NEPA) before issuing the lease modifications. MCC relies on this aspect of the ruling to support its arguments that Conservation Groups' request to enforce the remedy violates the "mandate rule" and is barred by the "law of the case," and its claim that

4

it has statutory and lease rights that authorize road construction. MCC 4–13; *see also* Fed. Resp'ts' Opp'n to Emergency Mot. to Enforce Remedy ("Feds") 9, ECF 80 (request is "beyond the scope of the mandate"). These arguments fail, however, because MCC overstates the Tenth Circuit's narrow holding related to the lease modifications and ignores the impacts of vacatur.

MCC repeatedly characterizes the Tenth Circuit's decision as "upholding" or "affirming" the lease modifications. MCC 3, 5, 8, 11, 12, 13. But the Tenth Circuit simply held that BLM and the Forest Service were not required to consider a methane-flaring alternative before authorizing the lease modifications. Op. 19. Nothing in the Court's ruling confirms MCC's road construction rights despite vacatur of the only basis on which MCC may build roads.

MCC's heavy reliance on the fact that the Tenth Circuit did not vacate the lease modifications is misplaced. MCC 7–13. The Tenth Circuit knew that MCC understood that vacatur of the North Fork Exception would halt future mining due to MCC's inability to construct roads. Mot. Ex. 1. The Court did not need to vacate the lease modifications to achieve that result because the modifications do not provide an unconditional right to build roads.

MCC incorrectly claims that Conservation Groups argue that vacatur of the North Fork Exception necessarily vacates the lease modifications and Forest Service consent. MCC 8–9. Conservation Groups argue only that the vacatur order affects MCC's right to construct roads pursuant to the lease modifications and Forest Service consent. Mot. 8–10. The Tenth Circuit's decision on methane flaring thus is not *dicta*, as MCC claims. MCC 9. Vacatur of North Fork Exception prohibits current road construction, but if the Forest Service adopts a valid exception, MCC could exercise its road construction rights under its approved lease modifications. *See Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, 468 F. Supp. 2d 1140, 1146 (N.D. Cal. 2006) (prohibiting

"road building . . . prohibited by the Roadless Rule," but not invalidating the leases).[3] Contrary to MCC's assertions, the Tenth Circuit's methane flaring ruling does not insulate MCC from the impacts of the vacatur order under the "mandate rule" or "law of the case."

Nor did the Tenth Circuit provide MCC with "statutory rights" subject to the statutory rights exception to the Colorado Roadless Rule. MCC 7, 11–13.[4] As MCC recognizes, the Forest Service did not base its consent to road construction on the statutory rights exception. *See id.* at 7. Nor could it have. Nothing in the Mineral Leasing Act gives MCC a statutory right to mine coal. The Secretary has discretionary authority to grant such rights. 30 U.S.C. §§ 201(a), 207(a). Here, the Forest Service's grant of road construction authority was entirely dependent on the North Fork Exception. Without it, MCC has no authorization to bulldoze roads in a roadless area.

## II. This Court Should Not Allow the Forest Service to Abdicate Its Legal Obligations by Ignoring MCC's Illegal Road Construction.

On July 31, 2018, the Forest Service concurred in MCC's mine permit revision authorizing road construction within the Sunset Roadless Area. Stewart Decl. ¶ 8. In that concurrence, the Forest Service notified MCC that "active litigation" could impact the lease modifications and that the Forest Service would notify MCC if the "situation changes." *Id.* The

---

[3] If MCC is concerned that it will have to pause mining in the lease modifications area, and thus be unable to "diligently" mine coal while the Forest Service undertakes a new NEPA process, the company could request that BLM suspend the lease modifications. *See* 30 U.S.C. § 209; *S. Utah Wilderness All. v. Office of Surface Mining Reclam. & Enf't*, 620 F.3d 1227, 1231, 1237 (10th Cir. 2010) (suspension tolls diligent development requirement).

[4] MCC's argument that the lease stipulation "exempts" it from the Colorado Roadless Rule lacks merit. MCC 12–13. The Forest Service based its consent to road construction on the existence of the North Fork Exception, not the language of MCC's lease. *Supra* p. 3. Moreover, the lease stipulations state that the leased lands within the roadless area "may be subject to restrictions on road-building pursuant to rules and regulations of the Secretary of Agriculture *applicable at the time any roads may be proposed on the lease*." FSLeasingII-100 (emphasis added).

situation did change when the Tenth Circuit ruled. Indeed, the Forest Service advised MCC to confirm with DRMS "the validity of the permit following the court ruling." *Id.* ¶ 13. But the Forest Service did not reconsider its own authorization. *Id.* ¶ 14. According to MCC, the Forest Service "stated that their consents had not been disturbed." Norris Decl. ¶ 5.

The Forest Service's primary defense to its inaction is that the road construction occurred after the Tenth Circuit entered the mandate but before this Court entered its vacatur order. Feds 2. In effect, it urges this Court to incentivize losing parties to violate appellate orders after the mandate issues but before its entry by the district court. That is not the law. Mot. 9; Fed. R. App. P. 41(c) ("The mandate is effective when issued."). Once the appellate mandate issues, "the parties' obligations become fixed"—the "[mandate's] effectiveness is not delayed until . . . the trial court or agency . . . acts upon it." Fed. R. App. P. 41(c) advisory committee's note.

The Forest Service fails to distinguish the law Conservation Groups cite. Feds 9–12; Mot. 9. The Forest Service points to *Crickon v. United States*, No. 3:12-cv-0684-SI, 2013 WL 2359011, at *5 (D. Or. May 28, 2013), but that case held the challenged regulation was invalid when the appellate mandate issued, not when district court acted upon it. Although *Crickon* did not require the regulator to take affirmative steps to implement the mandate until the district court acted, the court recognized that once the appellate mandate issues, "the opinion of the Court of Appeals is binding" and "has precedential authority." *Id.* at *5, *7. Here, the Tenth Circuit issued the mandate ordering vacatur of the North Fork Exception on April 24, 2020. ECF 74. After that, neither MCC nor the Forest Service could reasonably rely on the Exception.

The Forest Service's attempt to shift the blame to Conservation Groups for not requesting entry of the vacatur order sooner rings hollow. Feds 11. The Forest Service is the steward of the

7

national forests, not Conservation Groups. Even so, Conservation Groups contacted the Service the week before MCC bulldozed the road, seeking assurance that it would not allow construction in the Sunset Roadless Area. Decl. of Robin Cooley ¶¶ 2–5, ECF 77-2. Yet the Forest Service refused to even notify Conservation Groups of MCC's planned road construction. *Id.*

Furthermore, the Forest Service fails to express any view on the legality of the tree clearing and drilling pad construction that MCC undertook in the roadless area *after* this Court entered the mandate on June 15 or MCC's plans for additional road construction. This Court should not allow the Forest Service to stand by while MCC violates the vacatur order.

### III. The Vacatur Order Itself Enjoins Road Construction.

The U.S. Supreme Court held that where the "less drastic remedy" of vacatur is sufficient to remedy the harm, "no recourse to the additional and extraordinary relief of an injunction [i]s warranted." *Monsanto*, 561 U.S. at 165–66; *see Diné CARE*, 923 F.3d at 859 ("Given our remand instructions to vacate, however, there is no need to also 'enjoin any further ground-disturbing activities.'"); *Friends of Alaska Nat'l Wildlife Refuges*, 2020 WL 2892221, at *10 (holding injunction not warranted where vacatur was sufficient relief). Here, the vacatur order halts road construction in the Exception area, rendering additional injunctive relief unnecessary.

MCC and the Forest Service argue that Conservation Groups must seek additional injunctive relief. MCC 13–15; Feds 12–15. Although MCC cites *Monsanto*, it ignores the Court's statement that injunctive relief is unnecessary where vacatur is sufficient to remedy the harm. MCC 13. Federal Defendants point to *California ex rel. Lockyer v. U.S. Department of Agriculture*, 459 F. Supp. 2d 874 (N.D. Cal. 2006), but this case simply balanced the equities

using the injunction standard to determine *whether* to "enjoin" the illegal rule. *Id.* at 915.[5] Here, the Tenth Circuit considered the equities—including the impact to MCC's mining operations—and ordered vacatur of the illegal Exception. The district court cannot revisit this decision.[6]

Yet, even if this Court balances the equities (which it need not do), Conservation Groups satisfy each of the four injunctive relief requirements. *Monsanto*, 561 U.S. at 156–57. First, MCC's decision to bulldoze a road and to scrape drilling pads in the Sunset Roadless Area has caused irreparable harm to pristine scrub oak, wild aspen, and spruce-fir forest in an area otherwise known for its solitude and refuge, and it will continue to cause irreparable harm absent action by this Court. Henderson Decl. ¶¶ 7–17; Reed Decl. ¶¶ 3–11, 14–15; *see Lockyer*, 459 F. Supp. 2d at 914. Second, the remedies at law are inadequate because these illegal activities will cause permanent harm, with the scars persisting for decades if not longer. Henderson Decl. ¶¶ 14–17; *see Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987).

Third, the balance of hardships favors enjoining these unlawful acts because, given MCC's representations, additional permanent damage to the roadless area is certain to occur. Cooley Decl. ¶ 5; *see Amoco*, 480 U.S. at 545. In contrast, while MCC claims that enjoining its illegal activities would force layoffs, no evidence supports this assertion. *See* Norris Decl. ¶ 8.

---

[5] The Forest Service's citation to a subsequent order in *Lockyer* is unavailing—the court held that a 65 percent complete logging project could continue. 2006 WL 2827903, at * 2 (N.D. Cal. Oct. 3, 2006). Here, the road construction had yet to begin when the appellate mandate issued.

[6] The Forest Service's reliance on the judgment in *Organized Vill. of Kake*, 776 F. Supp. 2d 960 (D. Alaska 2011), ECF 80-2, is misplaced. It incorrectly claims the district court listed projects that could continue "notwithstanding any inconsistency with the reinstated Roadless Rule." Feds 14. But the court entered an agreement by the principle parties, and most of the listed projects were "not prohibited [by] the Roadless Rule" and included only to avoid undertainty. Ex. C (Notice Proposed J. 2). No such agreement exists here.

Nor does MCC address how it might avoid any such impacts. In 2017, MCC indicated that previously approved mining on the parent leases would continue for another decade. FSLeasingII-209. MCC also has access to mine panel 1 in the Sunset Roadless Area, which would be unaffected by the Groups' requested relief. *See supra* p. 2 n.1. Moreover, any harm suffered by MCC is "self-inflicted" to the extent it proceeded with its plans despite ongoing litigation. *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002), *abrogated on other grounds by Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016).

Finally, there is a "strong public interest in preserving our [roadless] national forests in their natural state," which satisfies the fourth factor. *Lockyer*, 459 F. Supp. 2d at 914. Despite the pandemic, thousands have opposed Mountain Coal's illegal activities, seeking to protect the pristine area from further harm. Henderson Decl. ¶ 19; *see Wyo. Outdoor Coordinating Council v. Butz*, 484 F.2d 1244, 1250 (10th Cir. 1973) *overruled on other grounds by Vill. of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992) (en banc); *Colo. Wild v. U.S. Forest Serv.*, 299 F. Supp. 2d 1184, 1190–91 (D. Colo. 2004).

## CONCLUSION

For these reasons, the Court should grant plaintiffs' motion and the relief requested.

Respectfully submitted July 1, 2020,

/s/ *Robin Cooley*

| | |
|---|---|
| Robin Cooley | Marta Darby |
| Earthjustice | Earthjustice |
| 633 16th Street, Suite 1600 | 633 16th Street, Suite 1600 |
| Denver, CO 80202 | Denver, CO 80202 |
| (303) 623-9466 | (303) 623-9466 |
| Fax: (303) 623-8083 | Fax: (303) 623-8083 |
| rcooley@earthjustice.org | mdarby@earthjustice.org |

Counsel for Plaintiffs High Country Conservation Advocates, *et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2020, I filed the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION OF EMERGENCY MOTION TO ENFORCE REMEDY** with the Court's electronic filing system, thereby generating service upon the following parties of record:

Michael Drysdale
DORSEY & WHITNEY LLP
50 South Sixth Street, Ste. 1500
Minneapolis, MN 55402-1498
Telephone: (612) 340-5652
Facsimile: (612) 340-8800
Email: drysdale.michael@dorsey.com

Scott P. Sinor
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202
Telephone: (303) 629-3400
Facsimile: (303) 629-3450
Email: sinor.scott@dorsey.com

Attorneys for MCC Company

Michelle-Ann C. Williams
U.S. Department of Justice-DC-#7611
P.O. Box 7611
Environment & Natural Resources Division
Washington, DC 20044-7611
(202) 305-0420
Fax: (202) 305-0506
Email: michelle-ann.williams@usdoj.gov

Paul Andrew Turcke
U.S. Department of Justice-DC-#7611
Environment and Natural Resources Division
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
(202) 353-1389
Fax: (202) 305-0506
Email: paul.turcke@usdoj.gov

Counsel for Federal Defendants

/s/ *Robin Cooley*
Counsel for Plaintiffs High Country Conservation Advocates, *et al.*