IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-03025-PAB

HIGH COUNTRY CONSERVATION ADVOCATES,
WILDEARTH GUARDIANS,
CENTER FOR BIOLOGICAL DIVERSITY,
SIERRA CLUB, and
WILDERNESS WORKSHOP,

    Plaintiffs,

v.

UNITED STATES FOREST SERVICE,
U.S. DEPARTMENT OF AGRICULTURE,
DANIEL JIRÓN, in his official capacity as Acting Under Secretary of Agriculture for Natural Resources and Environment, U.S. Department of Agriculture,
SCOTT ARMENTROUT, in his official capacity as Supervisor of the Grand Mesa, Uncompahgre, and Gunnison National Forests,
UNITED STATES DEPARTMENT OF THE INTERIOR,
BUREAU OF LAND MANAGEMENT, and
KATHARINE MACGREGOR, in her official capacity as Deputy Assistant Secretary, Land and Minerals Management, U.S. Department of the Interior,

    Defendants, and

MOUNTAIN COAL COMPANY, LLC,

    Defendant-Intervenor.

---

# ORDER

---

This matter is before the Court on Plaintiffs' Emergency Motion to Enforce Remedy [Docket No. 77].

## I.  BACKGROUND

### A.  Factual Background

This lawsuit is part of an ongoing dispute over proposed exploration and coal mining activities in and around the Sunset Roadless Area near the west flank of Mount Gunnison in Colorado.  Docket No. 62 at 2.  The Sunset Roadless Area is located on National Forest lands managed by the United States Forest Service ("Forest Service"). *Id.* at 3.  The Bureau of Land Management ("BLM") is, however, responsible for managing coal leases on Forest Service land.  *See* 30 U.S.C. § 181 *et seq*.  Coal leases and lease modifications are subject to a dual-agency permitting process by which the BLM must obtain the consent of the Forest Service before approving leases or lease modifications.  *High Country Conservation Advocates v. United States Forest Serv.*, 52 F. Supp. 3d 1174, 1182-83 (D. Colo. 2014) ("*High Country I*").

The Colorado Roadless Rule, adopted by the Forest Service in 2012, prohibits road construction in certain designated areas.  *See* 36 C.F.R. § 294.43.  At the time of adoption, the Roadless Rule included an exception for the North Fork Coal Mining Area (the "North Fork Exception").  *See* Special Areas; Roadless Area Conservation; Applicability to National Forests in Colorado, 77 Fed. Reg. 39,576, 39,578 (July 3, 2012).  The North Fork Exception allowed for road construction related to coal mining in previously protected land, including the Sunset Roadless Area.  *High Country I*, 52 F. Supp. 3d at 1184.  In prior litigation, Judge R. Brooke Jackson severed the North Fork Exception from the remainder of the Roadless Rule and vacated the North Fork

Exception. *High Country Conservation Advocates v. United States Forest Serv.*, 67 F. Supp. 3d 1262, 1266-67 (D. Colo. 2014) ("*High Country II*").

Defendant-intervenor Mountain Coal Company, LLC ("Mountain Coal") operates the West Elk Coal Mine, an underground mine that runs below parts of the Grand Mesa, Uncompahgre, and Gunnison National Forests. Docket No. 62 at 3. After the conclusion of the prior litigation, Mountain Coal renewed certain mine expansion applications that would extend into the area covered by the North Fork Exception. *Id*. at 6. The Forest Service subsequently initiated a rulemaking to reimplement the North Fork Exception. *Id*. In the course of this rulemaking, the Forest Service produced a supplemental final environmental impact statement (the "Exception SFEIS"). *Id*. at 7. On December 19, 2016, the Forest Service issued a Record of Decision and readopted the North Fork Exception. *See* Roadless Area Conservation; National Forest System Lands in Colorado, 81 Fed. Reg. 91,811 (Dec. 19, 2016). In April 2017, the BLM issued a supplemental environmental impact statement related to the lease modifications (the "Leasing SFEIS"). Docket No. 62 at 7. In December 2017, the Forest Service consented, and BLM approved, Mountain Coal's lease modifications. *Id*. at 8. As relevant here, the lease modifications allow Mountain Coal to perform exploration activities, including specified road construction, with a view toward expanded mining operations into the Sunset Roadless Area. *Id*. at 3 (citing Docket No. 1 at 18, ¶ 52).

**B.   Procedural History**

On December 15, 2017, plaintiffs, certain environmental advocacy organizations, filed this action, challenging the approval of both the North Fork Exception and

Mountain Coal's lease modifications.  Docket No. 1.  The complaint includes eight causes of action, all arising under the federal Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, asserting that the agency defendants[1] violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4331 *et seq.*, in promulgating the Exception SFEIS and the Leasing SFEIS.  *See id*. at 31-37, ¶ 90-123.  The Court issued a ruling on the merits in the agency defendants' favor on August 10, 2018.  Docket No. 62.  As relevant here, the Court concluded that the agency defendants did not violate NEPA by failing to consider (1) the "Pilot Knob Alternative" in the Exception SFEIS or (2) the "Methane Flaring Alternative" in the Leasing SFEIS.  *Id*. at 19-29.  The Court entered judgment on August 16, 2018.  Docket No. 63.

Plaintiffs appealed.  Docket No. 64.  On March 2, 2020, the Tenth Circuit vacated the Court's judgment.  *High Country Conservation Advocates v. United States Forest Service*, 951 F.3d 1217 (10th Cir. 2020) ("*High Country III*").  The Tenth Circuit concluded that the Forest Service's decision to eliminate the Pilot Knob Alternative from the Exception SFEIS was arbitrary and thus violated NEPA.  *Id*. at 1224-25.  However, the Tenth Circuit agreed with the Court that the agency defendants did not violate NEPA by not considering the Methane Flaring Alternative in the Leasing SFEIS.  *Id*. at 1227-28.  As to remedy, the Tenth Circuit determined that "vacatur of the entire North Fork Exception" was the appropriate remedy, rejecting Mountain Coal's argument that the

---

[1] The Court uses the term "agency defendants" to refer to the Forest Service, BLM, and the individual defendants named in their official capacities.

North Fork Exception should be vacated "only as applied to the Pilot Knob Roadless Area." *Id*. at 1229.

The Tenth Circuit's mandate issued on April 24, 2020. Docket No. 74. The Court entered an order vacating the North Fork Exception on June 15, 2020. Docket No. 78.[2]

On June 12, 2020, plaintiffs filed the instant motion, which is styled an "emergency motion to enforce remedy." Docket No. 77. Plaintiffs argue that, as the result of vacatur of the North Fork Exception, the Colorado Roadless Rule prohibits road construction for mining purposes in the Sunset Roadless Area. *Id*. at 1. Plaintiffs represent that, notwithstanding this fact, defendant-intervenor Mountain Coal Company ("Mountain Coal") bulldozed a new road in the Sunset Roadless Area the week of June 1, 2020, and plans to construct further new roads in the area. *Id*. at 1-2. Plaintiffs request that, as to the North Fork Exception area, the Court order (1) the Forest Service to "immediately withdraw consent to any approvals authorizing Mountain Coal to engage in surface disturbing activities" and (2) Mountain Coal to "immediately halt all surface disturbing activities." *Id*. at 2-3.

On June 19, 2020, plaintiffs filed a motion to extend the briefing schedule, indicating that any need for expedited review of the instant motion had been "mitigated" by a cessation order filed by the Colorado Division of Reclamation, Mining, and Safety ("Colorado DRMS"). Docket No. 79; *see also* Docket No. 79-1 (cessation order).

---

[2] Because the Court has entered the mandate, plaintiffs' unopposed motion for entry of the mandate will be denied as moot. Docket No. 76.

Subsequently, the federal defendants and Mountain Coal filed responses, Docket Nos. 80 and 84, and plaintiffs filed a reply. Docket No. 89.

On September 18, 2020, plaintiffs filed a "motion to expedite consideration" of the instant motion. Docket No. 94.[3] Plaintiffs represent that Colorado DRMS modified the cessation order on September 17, 2020, such that Mountain Coal could immediately resume construction in the North Fork Exception area. *Id.* at 2. In response, Mountain Coal represents that work is not expected to begin until October 2, 2020. Docket No. 97. In their response, the agency defendants offer a letter sent from BLM to Mountain Coal's attorney dated August 25, 2020. Docket No. 96-1. In the letter, BLM offers confirmation that, following vacatur of the North Fork Exception, Mountain Coal's leases permit it to "travel on, maintain, and otherwise use" certain temporary roads and drill pads, construct remaining approved drill pads (including tree-cutting as needed), and drill certain approved boreholes. *Id.* at 2-3.

## II. ANALYSIS

"District courts have the authority to enforce the terms of their mandates," which includes "the power to construe and interpret the language of the judgment." *Anglers Conservation Network v. Ross*, 387 F. Supp. 3d 87, 93 (D.D.C. 2019) (internal quotations omitted). "A motion to enforce is the usual method for requesting a court to interpret its own judgment and to compel compliance if necessary." *Id.* (internal quotations omitted). However, a court considering a motion to enforce after an appellate remand is bound by the mandate rule, which requires the court to "carry the

---

[3] The Court will also deny this motion as moot.

mandate of the upper court into execution" and divests the court of power to consider "the questions which the mandate laid at rest." *Estate of Cummings by & through Montoya v. Cmty. Health Sys., Inc.*, 881 F.3d 793, 801 (10th Cir. 2018) (internal quotations and brackets removed). In addition to those issues expressly ruled on by the upper court, the mandate rule forecloses litigation of issues decided by the lower court that were foregone on appeal or otherwise waived. *Id*.

Here, the Tenth Circuit's mandate to this Court was "for entry of an order vacating the North Fork Exception." *High Country III*, 951 F.3d at 1229. The Court entered such an order on June 15, 2020. Docket No. 78. Plaintiffs argue that, in vacating the North Fork Exception, "the Tenth Circuit precluded any road construction or tree clearing activities in the Sunset Roadless Area." Docket No. 77 at 6. And plaintiffs contend that, as a result, Mountain Coal failed to comply with the mandate by beginning surface-disturbing activities in the Sunset Roadless Area. *Id*. at 7, 11-13.

If the Tenth Circuit intended to preclude any road construction or tree-clearing activities in the Sunset Roadless Area, that instruction is not explicit in its opinion. *See generally High Country III*, 951 F.3d at 1217-29. The Tenth Circuit's opinion includes three holdings. First, because the Exception SFEIS arbitrarily eliminated the Pilot Knob Alternative, the Forest Service violated NEPA in promulgating the North Fork Exception. *Id*. at 1224-27. Second, the agency defendants did not violate NEPA by not considering the Methane Flaring Alternative in the Leasing SFEIS because the agency defendants took the requisite "hard look" at it. *Id*. at 1227-28. Third, the appropriate remedy for the NEPA violation in promulgating the Exception SFEIS was vacatur of the entire North

Fork Exception. *Id*. at 1228-29. Judge Kelly dissented from the first holding but concurred in the second, while not commenting on the panel's chosen remedy. *Id*. at 1229-32 (Kelly, J., dissenting).

Because the Tenth Circuit's opinion is silent on the question of the lease modifications, the question is whether the Tenth Circuit's vacatur of the North Fork Exception requires the Court to vacate Mountain Coal's lease modifications as well, as plaintiffs request. *See* Docket No. 77 at 2-3. Under the APA, courts shall "hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Here, the Tenth Circuit affirmed this Court's holding that the issuance of the Leasing SFEIS – and the agency decision it supported, Mountain Coal's lease modifications – did not violate NEPA and was not arbitrary or capricious. *See High Country III*, 951 F.3d at 1228-29. And the Tenth Circuit explicitly vacated only the North Fork Exception, not Mountain Coal's lease modifications. *See id*. at 1229. If vacatur of the North Fork Exception compelled vacatur of the lease modifications, this conclusion is not apparent from the mandate.[4]

In at least one other case, the Tenth Circuit has expressly considered whether or not to vacate a lease after finding a NEPA violation. *See WildEarth Guardians v. United States Bureau of Land Management*, 870 F.3d 1222 (10th Cir. 2017). The Tenth Circuit determined that BLM violated NEPA in the process of preparing an EIS for certain mining leases. *Id*. at 1237-38. However, the Tenth Circuit rejected plaintiffs' request to

---

[4] Similarly, if vacatur of the North Fork Exception automatically required vacatur of the lease modifications, the Tenth Circuit's discussion of the Leasing SFEIS would seem to be little more than dicta.

vacate the mining leases as a remedy, noting that the district court "might fashion some narrower form of injunctive relief" on remand and that the parties did not touch on the question of "whether mining the lease tracts should be enjoined." *Id*. at 1240. The Tenth Circuit remanded with instructions to enter an order requiring BLM to revise its EIS, but did not vacate the resulting leases. *Id*. Here, the extent of the Tenth Circuit's mandate was remand "for entry of an order vacating the North Fork Exception." *High Country III*, 951 F.3d at 1229. Unlike in *WildEarth Guardians*, the Tenth Circuit's order contains no discussion of the effect that such an order would have on the lease modifications. *See WildEarth Guardians*, 870 F.3d at 1240. Because the Tenth Circuit's mandate contains no express or implied directive to vacate the lease modifications, the Court will decline to do so.

The Court next considers whether it may nevertheless order the relief that plaintiffs seek, which includes enjoining Mountain Coal from conducting any "surface disturbing activities" within the North Fork Exception area. Docket No. 77 at 3.

Plaintiffs' complaint includes eight causes of action, all of which allege NEPA violations in the process of promulgating both the North Fork Exception and the lease modifications. *See* Docket No. 1 at 31-37, ¶ 90-123. All of plaintiffs' process challenges to the lease modifications have been resolved in the agency defendants' favor. What plaintiffs raise now appears to be an entirely new claim, targeted not at the agency defendants but at Mountain Coal.[5] Plaintiffs' claim is that Mountain Coal's surface-

---

[5] To the extent that plaintiffs' motion argues that "the Forest Service had no authority to authorize Mountain Coal to construct roads in the Sunset Roadless Area," *see* Docket No. 77 at 8, the Court is not convinced that this claim could be construed

9

disturbing activities in the Sunset Roadless Area violate the Roadless Rule, notwithstanding provisions that may be contained in Mountain Coal's lease agreements with BLM.  The merits of that claim, about which the Court expresses no opinion, are weighty and disputed by plaintiffs and Mountain Coal.  That does not mean, however, that the Court may resolve the claim on the basis of the complaint in this case, which is brought pursuant to the APA and NEPA.  "[S]tatutes like the APA" and NEPA "permit judicial review only to ensure that, in making a decision, a governmental agency follows the proper procedural process."  *See Colo. Env't Coal. v. Salazar*, 875 F. Supp. 2d 1233, 1243 (D. Colo. 2012).  Whether or not a private entity's actions are prohibited under a regulation is a question that does not appear to be within the scope of this type of procedural review, and must therefore be brought in some other posture that would permit review.  *Cf. id*. at 1259 ("The Court has concerns as to whether [canceling leases] falls within the scope of the instant action, which is an APA challenge to the [EIS] (not to the decision to issue[] leases).").  Accordingly, the Court will deny plaintiffs' motion.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Emergency Motion to Enforce Remedy [Docket No. 77] is **DENIED**.  It is further

**ORDERED** that Plaintiffs' Unopposed Motion for Entry of Tenth Circuit Mandate [Docket No. 76] is **DENIED AS MOOT**.  It is further

---

as arising under NEPA or plaintiffs' complaint in this case.

**ORDERED** that Plaintiffs' Motion to Expedite Consideration of Plaintiffs' Emergency Motion to Enforce Remedy [Docket No. 94] is **DENIED AS MOOT**.

DATED October 2, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge